UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DARCI DeANDRADE,                              :
                                              :
                              Plaintiff,      :
                                              :        **OPINION AND ORDER**
              - against -                     :        11 Civ. 00011 (ER)
                                              :
K.J. MOUNTAIN CORP. and GOLDEN OAK            :
CONTRACTING, INC.,                            :
                                              :
                              Defendants.     :
-------------------------------------------------------------x

Ramos, D.J.:

　　　　Plaintiff ("Plaintiff or "DeAndrade") brings this personal injury action against K.J.

Mountain Corp. ("K.J. Mountain") and Golden Oak Contracting, Inc. ("Golden Oak")

(collectively, "Defendants") seeking compensatory damages for injuries suffered as a result of

Plaintiff's fall from a ladder while performing framing work at a construction site owned by K.J.

Mountain.  Amended Complaint ("Am. Compl.") (Doc. 6).  K.J. Mountain has cross-claimed

against Golden Oak seeking indemnification for the full amount of damages awarded, if any,

against K.J. Mountain on Plaintiff's claims.  Doc. 31.  Currently before the Court are the parties'

cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

Specifically, Plaintiff moves for summary judgment on his claims under New York Labor Law

("NYLL") §§ 240(1) and 241(6), Doc. 33, and Defendants both move for summary judgment on

all of Plaintiff's claims, Docs. 42, 50.  Additionally, Golden Oak moves for summary judgment

on K.J. Mountain's cross-claims.  Doc. 42.  For the reasons set forth below, Plaintiff's and

Golden Oak's motions are DENIED in their entirety, and K.J. Mountain's motion is DENIED in

part and GRANTED in part.

---

[1] On May 9, 2013, the Court granted K.J. Mountain's request to deem its opposition papers to Plaintiff's motion for summary judgment as a cross-motion for summary judgment.  *See* May 9, 2013 Minute Entry.

## I.   Factual Background

The following facts are undisputed except where otherwise noted.

### a.   The November 23, 2009 Incident

On November 23, 2009, Plaintiff, an employee of third-party E.C. Construction of Newark, LLC ("E.C. Construction"), was working on a construction site for a new house in Hamptonburgh, New York when he fell from a 16-foot extension ladder.  Pl.'s 56.1 Stmt. (Doc. 35) ¶¶ 1-2; *see also* Declaration of Charlotte G. Swift ("Swift Decl.") (Doc. 48), Ex. D (Garcia Dep. Tr.) at 30; Am. Compl. ¶¶ 6-7.  It is undisputed that K.J. Mountain was the owner and general contractor for the house under construction, Pl.'s 56.1 Stmt. ¶ 3, and that it hired Golden Oak as a subcontractor to perform the framing work on the house.  *Id.* ¶ 4; *see also* Golden Oak's Ctr. 56.1 Stmt. (Doc. 43) ¶ 16 ("One of the subcontractors that K.J. Mountain hired was . . . Golden Oak Contracting, Inc., to perform framing.").  Thereafter, Golden Oak entered into a verbal subcontract agreement with E.C. Construction to perform the framing work.  Golden Oak's Ctr. 56.1 Stmt. ¶ 18; *see also id.* at Exs. G (June 13, 2012 Grass Dep. Tr.) at 15; H (Garcia Dep. Tr.) at 15.  As of the time of the accident, E.C. Construction had been doing work as a subcontractor for Golden Oak for approximately two years.  Swift Decl., Ex. D (Garcia Dep. Tr.) at 14.  Plaintiff worked for E.C. Construction as a temporary, per-diem employee.  Golden Oak's Ctr. 56.1 Stmt. ¶ 20.

At the time of Plaintiff's fall and prior thereto, an extension ladder was positioned on the first floor of the house as a regular means of access to the second floor, as permanent stairs had not yet been installed in the house.  Pl.'s 56.1 Stmt. ¶ 8.  Eduardo Costa Garcia ("Garcia"), a partner in E.C. Construction, testified that on the day of Plaintiff's fall, Garcia had nailed a two-by-four to the ground to secure the ladder.  Swift Decl., Ex. D (Garcia Dep. Tr.) at 33; *see also*

2

Pl.'s 56.1 Stmt. ¶ 11.  However, shortly before Plaintiff's fall, Garcia moved the ladder and did

not re-secure it with the two-by-four.  Swift Decl., Ex. D (Garcia Dep. Tr.) at 34; *see also* Pl.'s

56.1 Stmt. ¶ 11.  Additionally, the ladder was positioned adjacent to a three-by-six foot opening

to the basement.  Pl.'s 56.1 Stmt. ¶ 12.  Although the opening was generally covered for safety

reasons, Garcia had removed the covering approximately 30 minutes prior to Plaintiff's fall

because he was cleaning up the construction site in preparation to leave for the day.  Swift Decl.,

Ex. D (Garcia Dep. Tr.) at 42-44.  As a result, when Plaintiff fell from the ladder, he fell through

the opening, which was approximately eight feet above the basement floor.  Pl.'s 56.1 Stmt. ¶ 15.

It is undisputed that at the time of the incident, Plaintiff was not provided with a safety belt and

that there was no life net installed beneath the opening.  *Id.* ¶¶ 16-17.  It is also undisputed that at

the time of Plaintiff's fall, the ladder was neither held in place by a person stationed at the foot of

the ladder nor was the top end of the ladder secured "by its position or by mechanical means."

*Id.* ¶ 10.

        As relevant to the instant motion, Garcia testified that at the time of Plaintiff's accident,

he owned four ladders—two extension ladders and two step ladders.  Swift Decl,. Ex. D (Garcia

Dep. Tr.) at 29-30.  One of those extension ladders was the 16-foot extension ladder that Plaintiff

was using at the time of his fall.  *Id.* at 30.  The record is unclear whether the other extension

ladder that Garcia owned at the time was 20 or 32 feet in length.  *Id.* at 29-30.  Plaintiff testified

that Garcia's 16-foot extension ladder was the only ladder available to him at the time of the

accident.  Swift Decl., Ex. F (June 13, 2012 DeAndrade Depo. Tr.) at 41 ("Q.  Were there other

ladders available that you could have used instead of this one that was missing the rung?  A.

No.").

        Golden Oak and K.J. Mountain both contend that Plaintiff gave "conflicting and

3

incongruous versions as to how he fell and why the accident allegedly occurred" at his two deposition sessions.  Golden Oak's Ctr. 56.1 Stmt. ¶ 23.  Specifically, at Plaintiff's first deposition on June 13, 2012, he testified that he was aware that the ladder he fell from was missing a rung and that he was able to see the missing rung and skip it during daylight hours. Swift Decl., Ex. F (June 13, 2012 DeAndrade Dep. Tr.) at 38.  However, at the time of the accident, Plaintiff was not able to see the missing rung because it had gotten dark.  *Id.* at 38, 57. As a result, when he got to the missing rung, his "foot went straight through," and when he tried to "look for support on the next [rung]," the ladder made a "tilting motion" which caused Plaintiff to fall.  *Id.* at 47; *see also id.* at 38-39.  At Plaintiff's second deposition on February 13, 2013, he testified that the ladder moved *before* he stepped in the missing rung and that he *was not* aware of the missing rung prior to the fall.  *See* Swift Decl., Ex. E (Feb. 13, 2013 DeAndrade Dep. Tr.) at 10-15.  Specifically, Plaintiff testified that as he was going down the ladder, "the ladder moved, and [he] tried to hold on, but there was one missing rung that [he] wasn't aware of.  That is when [his] foot went straight through . . . and it threw [him] through the hole in the ladder."  *Id.* at 10.

Plaintiff, on the other hand, argues that he testified consistently at both deposition sessions that:  (i) the ladder shifted from its original position to a leaning position; (ii) he made an attempt to get down the ladder and in that attempt, missed a rung of the ladder; and (iii) the ladder then twisted which caused him to fall.  *See* Pl.'s Decl. in Reply (Doc. 53) ¶¶ 7-8.  Plaintiff contends that his testimony has been consistent and "describes the exact danger associated with an *unsecured ladder* which is that a ladder can shift position, lean, move, and eventually twist with the weight of a worker which will cause the worker . . . to fall from the ladder."  *Id.* ¶ 9 (emphasis in original).

4

Plaintiff testified that he experienced pain in his ribs, arm and lower back as a result of the accident.  Swift Decl., Ex. F (June 13, 2012 DeAndrade Dep. Tr.) at 64.  He was treated at the hospital for a fractured wrist, and later underwent physical therapy and acupuncture for his wrist.  *Id.* at 66-71.  With respect to his back injury, Plaintiff testified that he has had six injections in his spine to help him with the pain.  *Id.* at 73.

### b.  Golden Oak's Level of Control and Supervision Over Plaintiff's Work

Golden Oak and K.J. Mountain dispute the level of Golden Oak's direction and control over the framing work that Plaintiff was performing at the time of the accident.  Specifically, K.J. Mountain contends that as the primary framing contractor, Golden Oak was responsible for all of the framing work on the house, and that James Grass ("Grass"), the owner of Golden Oak, "direct[ed] the work on the project."  Declaration of Joel Schwartz ("Schwartz Decl.") (Doc. 49) ¶ 1; Swift Decl., Ex. B (Schwartz Dep. Tr.) at 21-22; *see also id.* Ex. A (June 13, 2012 Grass Dep. Tr.) at 17.  Indeed, Grass admitted that he was present at the construction site four of the seven days that E.C. Construction worked on the house, Swift Decl., Ex. A (June 13, 2012 Grass Dep. Tr.) at 15, and Joel Schwartz ("Schwartz") of K.J. Mountain testified that on several occasions, he saw Grass actually performing work at the construction site, Schwartz Decl. ¶ 2.  Moreover, Golden Oak does not dispute that it was the prime framing contractor, that it was responsible for the framing work on the house, and that it had the ability to fire E.C. Construction.  Pl.'s 56.1 Stmt. ¶¶ 5-6; *see also* Swift Decl., Ex. A (June 13, 2012 Grass Dep. Tr.) at 14 ("Q.  Would Golden Oak have been the prime contractor for the framing work?  A.  Yes."), 17 ("Q.  Was it your understanding for being compensated for your work that you were responsible for the framing contract part of the house?  A.  Yes.").  Additionally, Golden Oak provided K.J. Mountain with a list of lumber for use in the framing work and provided the construction plans

5

to E.C. Construction. Swift Decl., Exs. B (Schwartz Dep. Tr.) at 22; D (Garcia Dep. Tr.) at 16.

Finally, K.J. Mountain paid Golden Oak directly for the framing work performed on the house.

Swift Decl., Ex. C (Feb. 13, 2013 Grass Dep. Tr.) at 12. Indeed, Schwartz was not even aware

that Golden Oak had subcontracted the framing work to E.C. Construction until discovery in this

litigation. Swift Decl., Ex. B (Schwartz Dep. Tr.) at 22.

Golden Oak, on the other hand, maintains that it did not physically do the work at the

construction site, that it does not have any employees, and that it wholly subcontracted the entire

framing job to E.C. Construction. Golden Oak's Ctr. 56.1 Stmt., Ex. G (June 13, 2012 Grass

Dep. Tr.) at 12; *see also id.* at Ex. O (Affidavit of James Grass) ("Grass Aff.") ¶ 9. Moreover,

Grass testified that he had no authority to supervise the framing work, that he did not give any

instructions to anyone associated with E.C. Construction as to how to frame the house, and that

he did not visit the site every day. Golden Oak's Ctr. 56.1 Stmt., Ex. G (June 13, 2012 Grass

Dep. Tr.) at 14-15, 17. Additionally, Garcia testified that when Grass was at the construction

site, he would answer particular questions about the plans, including any changes that were made

to the plans, but that he did not specifically instruct Garcia on how to frame a wall. Swift Decl.,

Ex. D (Garcia Dep. Tr.) at 18. Garcia further testified that Grass did not provide him with any

equipment or tools during E.C. Construction's work at the site. *Id.* at 19, 54-55.

It is undisputed, however, that whenever E.C. Construction worked at a job site for

Golden Oak, including the site at which Plaintiff's accident occurred, Garcia would drive a truck

that had a "Golden Oak" sign on it. Swift Decl., Ex. C (Feb. 13, 2013 Grass Dep.) at 8-10.

Indeed, Plaintiff testified that Garcia drove him to the construction site every day in a "Golden

Oak" van and, accordingly, Plaintiff believed that he worked for Golden Oak. Swift Decl., Ex. F

(June 13, 2012 DeAndrade Dep. Tr.) at 18-19, 24- 25; *see also id.* at Ex. E (Feb. 13, 2013

DeAndrade Dep. Tr.) at 5  ("Q.  And at that time [of the accident], who were you working for?  A.  Golden Oak.").

Finally, Plaintiff testified that while working on the house, he only took direction from Garcia and that the tools he used were either his own or were provided to him by Garcia.  Swift Decl., Ex. F (June 13, 2012 DeAndrade Depo. Tr.) at 27-28, 56; *see also id.* at Ex. C (Feb. 13, 2013 Grass Dep. Tr.) at 43.  Plaintiff also testified, however, that Grass was "always" at the construction site "talking to [Garcia]."  Swift Decl., Ex. F (June 13, 2012 DeAndrade Dep. Tr.) at 56-57.  It is undisputed that at the time of the incident, Grass was at the construction site performing a "walk-through" to ensure that the framing work was done as per the blueprints.  Swift Decl., Ex. A (June 13, 2012 Grass Dep. Tr.) at 28-29; *see also* Pl.'s 56.1 Stmt. ¶ 22.

### c.  The Sub-Contractor Agreement

Golden Oak and K.J. Mountain dispute the circumstances surrounding the execution of a Sub-Contractor Agreement (the "Agreement"), attached to the Swift Declaration as Exhibit H, pursuant to which Golden Oak agreed to "indemnify and hold harmless [K.J. Mountain] in the event of a loss, including but not limited to, any claim, suit, cost or expense arising out of any loss suffered by an employee of [Golden Oak] and/or Sub-Subcontractor."  The Agreement is signed by Grass and Schwartz's wife, Rifka Schwartz, and is dated August 15, 2009.[2]  *Id.* However, Grass testified that the Agreement was actually signed in January 2011 during a meeting between Grass and Schwartz at a gas station in Goshen, New York.[3]  Swift Decl., Ex. A

---

[2] Rifka Schwartz is the president and sole shareholder of K.J. Mountain.  Swift Decl., Ex. B (Schwartz Dep. Tr.) at 6.

[3] In its responses to Golden Oak's 56.1 Counter Statement of Material Facts, K.J. Mountain contends that "Mr. Grass *admitted* at his February 13, 2013 deposition that he signed the August 15, 2009 Indemnification Agreement with K.J., which bore the date of August 15, 2009 when he signed it, and Mr. Grass only now claims that August 15, 2009 was not the correct date of his signature."  K.J. Mountain's Response to Golden Oak's 56.1 Cntr. Stmt. (Doc. 51) ¶ 32 (emphasis added).  K.J. Mountain asserts that Grass should therefore be "bound by his admission that he

(June 13, 2012 Grass Dep. Tr.) at 44-45.  Grass testified that Schwartz called him to schedule the

meeting in order "to take care of some paperwork because of insurance."  *Id.* at 45.  Although

Grass testified that the Agreement that Schwartz asked him to sign did not reflect his prior verbal

agreement with K.J. Mountain, he nevertheless agreed to sign it during that meeting.  *Id.* at 46-

47.  Grass further testified that at the time he signed the Agreement in 2011, the August 15, 2009

date was already written on the space next to the line for his signature.  Swift Decl., Ex. C (Feb.

13, 2013 Grass Dep. Tr.) at 44.  Grass asserts that Schwartz did not inform him that he was being

sued by Plaintiff prior to or at the time of their January 2011 meeting.  Swift Decl., Ex. A (June

13, 2012 Grass Dep. Tr.) at 47.  According to Grass, the terms of the oral agreement he had

entered into with K.J. Mountain prior to Golden Oak commencing work on the house were

simply that Golden Oak would do the framing work for K.J. Mountain for $4.00 a square foot.

*Id.* at 10-11, 51-52.  Grass contends that the oral agreement did not include an indemnity

provision.  *Id.* at 51-52.

  Schwartz, on the other hand, testified that he observed Grass sign the Agreement on

August 15, 2009 and denied meeting Grass in early 2011.  Swift Decl., Ex. B (Schwartz Dep.

Tr.) at 16-17, 54, 57-58.  He further testified that he typed the Agreement on a computer and that

he personally filled in the August 15, 2009 date next to both his wife's and Grass's signatures.

*Id.* at 46-49.  Schwartz testified that he asks every subcontractor to execute an indemnity

agreement like the one at issue here prior to commencing work on his construction projects.  *Id.*

---

signed the Indemnification Agreement on August 15, 2009."  *Id.*  However, Grass's February 13, 2013 deposition
testimony directly contradicts K.J. Mountain's contention.  Far from admitting to signing the Agreement on August
15, Grass unequivocally testified that he signed the Agreement in early 2011, and *not* on August 15, 2009.  Swift
Decl., Ex. C (Feb. 13, 2013 Grass Dep. Tr.) at 44-45.  K.J. Mountain neglected to bring to the Court's attention
Grass's testimony that, irrespective of the date that was written on the Agreement at the time, he signed the
Agreement in early 2011.  This opinion assumes that the inaccurate citation was inadvertent.  Counsel is reminded,
however, that they have a duty not to "knowingly make [] false statement[s] of fact or law" to the Court.  ABA
Model Rule of Prof'l Conduct 3.3(a)(1).

at 18-19.  Golden Oak points out, however, that although K.J. Mountain made payments to at least seven different subcontractors in connection with their work on this construction site, a review of K.J. Mountain's files shows no such indemnity agreement for any subcontractor other than Golden Oak.  Golden Oak's 56.1 Ctr. Stmt. ¶¶ 38-39.

## II.     Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14,

9

18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## III.    Analysis

### a.  NYLL § 240(1)

NYLL § 240(1) states that:

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

In enacting § 240(1), the legislative intent was to protect workers "by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' instead of on workers who 'are scarcely in a position to protect themselves from accident.'"  *Morales v. Spring Scaffolding, Inc.*, 24 A.D.3d 42, 45 (1st Dep't 2005) (citations omitted).  The statute thus imposes liability that is strict, or absolute, in two senses:  "the duty it imposes is nondelegable, and thus contractors and owners are liable under the statute whether or not they supervise or control the work; and where an accident is caused by a violation of the statute, the plaintiff's own negligence does not furnish a defense."  *Cahill v. Triborough Bridge & Tunnel Auth.*, 4 N.Y.3d 35, 39 (N.Y. 2004).  It is still

necessary, however for the plaintiff to show that the defendant's violation of the statute was the proximate cause of his injury. *Id.* Thus, where a plaintiff's own actions are the sole proximate cause of the injury, there can be no liability. *Id.*

Here, Plaintiff argues that he is entitled to summary judgment on his § 240(1) claim because "it is not refuted that the ladder moved and was not secured which caused plaintiff to fall." Pl.'s Mem. L. (Doc. 33) at 6. Moreover, the opening in the floor was uncovered and Plaintiff was not provided with a safety harness or other device to prevent his fall. P.'s Decl. in Reply (Doc. 53) ¶ 20. K.J. Mountain, on the other hand, argues that Plaintiff's own actions caused the accident and, thus, any alleged violation of the statute by Defendants was not the proximate cause of Plaintiff's injuries. K.J. Mountain Mem. L. Opp. (Doc. 50) at 6. Specifically, K.J. Mountain argues that even assuming the ladder Plaintiff fell from was missing a rung, Plaintiff "admitted . . . that other safe equipment was immediately available to plaintiff. Thus, if the ladder was missing a rung, plaintiff's use of that ladder, instead of the other available ladders, defeats his claim." *Id.* Finally, Golden Oak argues that summary judgment should be entered in its favor on Plaintiff's § 240(1) claim because it did not have the authority to direct or control Plaintiff's work and was therefore not a statutory "agent" of K.J. Mountain's. Golden Oak's Mem. L. (Doc. 42) at 7.

The Court finds that material issues of fact exist regarding Plaintiff's § 240(1) claim. With respect to K.J. Mountain's argument that Plaintiff's actions, and not Defendants', were the proximate cause of his fall, the Court finds that contrary to K.J. Mountain's contention, whether other non-defective ladders were available for Plaintiff's use is a disputed issue of fact. Although K.J. Mountain relies on Plaintiff's testimony that Garcia provided him with both "small ladders" and "big ladders" in support of its argument, K.J. Mountain's Mem. L. Opp. at 7,

it ignores Plaintiff's unequivocal testimony that there were no other ladders available for his use at the time of the accident, Swift Decl., Ex. F (June 13, 2012 DeAndrade Dep. Tr.) at 41. Additionally, Garcia testified that in 2009, he only owned one 16-foot extension ladder, which is the ladder Plaintiff was using at the time of his fall.  Swift Decl,. Ex. D (Garcia Dep. Tr.) at 29-31.  Although Garcia testified that he did own one other taller extension ladder, *id.*, the parties do not indicate, and the record is not clear, whether the particular job Plaintiff was doing at the time of his fall specifically required him to use a 16-foot extension ladder.  The case upon which K.J. Mountain relies, *Miro v. Plaza Const. Corp.*, 38 A.D.3d 454 (1st Dep't 2007), is therefore distinguishable. There, the court found that plaintiff's own actions were the proximate cause of his accident where the plaintiff used a ladder knowing that it was defective, notwithstanding his admission that the employer had "'a lot of ladders' available for use on its projects" and that if plaintiff had reported the problem with the ladder to his employer, the employer would have supplied him with a new one.  *Id.* at 455.  Moreover, the Court notes that on appeal, the Court of Appeals held that the lower court erred in granting summary judgment to defendant on plaintiff's § 240(1) claim because, "[a]ssuming the ladder was unsafe, it is not clear from the record how easily a replacement ladder could have been procured."  *Miro v. Plaza Const. Corp.*, 9 N.Y.3d 948 (N.Y. 2007).

Here, the record is similarly unclear whether a substitute, non-defective and appropriately-sized ladder was available for Plaintiff's use.  Moreover, an issue of fact also exists with respect to whether the ladder at issue was, in fact, missing a rung and whether Plaintiff was aware of that fact.  Indeed, Garcia's deposition testimony that the ladder was in good condition and was not missing a rung, Swift Decl., Ex. D (Garcia Dep. Tr.) at 25-26, directly contradicts Plaintiff's testimony that the ladder was defective.  Although Plaintiff's deposition testimony is

internally inconsistent with regard to whether he was aware of the alleged missing rung prior to

the time of the accident, for purposes of K.J. Mountain's summary judgment motion, the portions

of Plaintiff's testimony stating that he was not aware of the missing rung must be credited.  *See*

*MCI Worldcom Network Servs., Inc. v. Clearwater Drilling, Inc.*, No. 01 Civ. 9961 (HB), 2002

WL 31444940, at *1 (S.D.N.Y. Nov. 1, 2002) (citing *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196,

202 (2d Cir.1995) (stating that a court must "draw all factual inferences in favor of the party

[against] whom summary judgment is sought"))).  Accordingly, assuming Plaintiff was unaware

of the allegedly missing rung, he did not "knowingly choose[] to use defective or inadequate

equipment," *Miro*,  38 A.D.3d at 455, and was therefore not necessarily the proximate cause of

the accident.

    Plaintiff appears to base his summary judgment motion not on the allegation that the

ladder itself was defective, but rather on Defendants' alleged failure to adequately secure the

ladder.  *See* Pl.'s Mem. L. at 2-7; *see also* Pl.'s Decl. in Reply ¶ 10.  As Plaintiff points out, to

the extent that his claim relies upon Defendants' failure to provide adequate safety devices, he is

not required to show that the ladder was defective as part of his prima facie case for summary

judgment on the § 240(1) claim.  *See McCarthy v. Turner Const., Inc.*, 52 A.D.3d 333, 333-34

(1st Dep't 2008).  However, irrespective of the condition of the ladder, Plaintiff still cannot

prevail on his motion for summary judgment, as case law is clear that "[w]here a plaintiff has an

adequate safety device readily available that would have prevented the accident, and for no good

reason chooses not to use it, Labor Law § 240(1) does not apply."  *Barreto v. Metro. Transp.*

*Auth.*, 110 A.D.3d 630, 632 (1st Dep't 2013) (where plaintiff was injured by falling into

uncovered manhole while performing asbestos removal work, holding that plaintiff could not

prevail on § 240(1) claim where "plaintiff was provided with the perfect safety device, namely,

13

the manhole cover, which was nearby and readily available," but failed to avail himself of it and failed to provide the court with "any good reason why he started [working] before ascertaining whether the cover was in place") (citing *Cahill*, 4 N.Y.3d at 39 (reversing grant of summary judgment in favor of plaintiff where "a jury could have found that plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured"))).   Here, although Garcia admitted to moving the two-by-four that had been securing the ladder shortly before Plaintiff's fall, Plaintiff has offered no explanation for his failure to secure the ladder with the brace prior to using it.   *See* K.J. Mountain's Mem. L. Opp. at 7.   Indeed, the record is unclear whether Plaintiff even *knew* about the existence of the brace, although he admitted at his deposition that the ladder was unsecured at the time he used it and that he did not ask Garcia for rope or a "stop" to secure it.   Swift Decl,. Exs. E (Feb. 13, 2013 DeAndrade Dep. Tr.) at 16; F (June 13, 2012 DeAndrade Dep. Tr.) at 35.   Accordingly, because material issues of fact exist regarding Plaintiff's failure to utilize the safety devices available, Plaintiff is not entitled to summary judgment on his § 240(1) claim.

Finally, the Court finds Golden Oak's argument that it is not the statutory agent of K.J. Mountain under the NYLL to be without merit.   Case law is clear that a prime contractor hired for a specific project is liable as a statutory agent of the owner or general contractor if it has been delegated the *authority* to supervise and control the work in which plaintiff was engaged at the time of his injury.   *Coque v. Wildflower Estates Developers, Inc.*, 31 A.D.3d 484, 488 (2d Dep't 2006).   "Once an entity becomes an agent under the Labor Law it cannot escape liability to an injured plaintiff by delegating the work to another entity."   *McGlynn v. Brooklyn Hosp.-Caledonian Hosp.*, 209 A.D.2d 486, 486 (2d Dep't 1994).   Here, Golden Oak's principal admits

14

that Golden Oak was the prime framing contractor and that it was responsible for the framing of the house.  Moreover, it is undisputed that Golden Oak was on site at the time of the accident and that Plaintiff was performing framing work.  Golden Oak thus cannot escape liability merely because it subcontracted out the framing work to E.C. Construction, Plaintiff's employer.  *See Nasuro v. PI Assocs., LLC*, 49 A.D.3d 829, 830-31 (2d Dep't 2008) (holding that prime plumbing contractor was liable under §240(1) where plaintiff was employee of company subcontracted by plumbing contractor); *Tomyuk v. Junefield Assoc.*, 57 A.D.3d 518, 520-21 (2d Dep't 2008) ("Once Home Improvement became an agent of the owner, it could not escape liability by delegating its work to another entity."); *Lu v. OL Vineyards PRC, LLC*, 880 N.Y.S.2d 871, 22 Misc.3d 1112(A), at *5 (Sup. Ct. Jan. 21, 2009) (holding that prime aluminum siding contractor could not escape liability under § 240(1) "merely because it subcontracted out th[e] work to . . . plaintiff's employer").  However, although the Court finds that Golden Oak was the statutory agent of K.J. Mountain under § 240(1), because questions of fact exist regarding the proximate cause of Plaintiff's accident, including whether adequate safety devices or a non-defective ladder were readily available for Plaintiff's use, summary judgment against Golden Oak on Plaintiff's § 240(1) claim is not warranted at this stage of the litigation.

## b.  NYLL § 241(6)

Section 241(6) of the Labor Law imposes a non-delegable duty of reasonable care upon owners and general contractors "to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor."  *Misicki v. Caradonna*, 12 N.Y.3d 511, 515 (N.Y. 2009) (internal quotation marks and citation omitted).  The Commissioner's safety rules are set out in the Industrial Code (Title 12 of the New York Codes, Rules and Regulations).  *Id.*  In

15

order to prevail on a claim under § 241(6), the particular provision relied upon by a plaintiff must mandate compliance with "concrete specifications and not simply declare general safety standards or reiterate common-law principles." *Id.* (citations omitted).  Whereas a violation of § 240(1) gives rise to both vicarious and absolute liability, a § 241(6) claim results in vicarious, but not absolute liability, and, thus, "[c]ontributory and comparative negligence are valid defenses to a Section 241(6) claim." *Id.*  Thus, breach of a duty imposed by a rule in the Code is merely *some evidence* for the factfinder to consider on the question of a defendant's negligence." *Id.* (emphasis added).

Here, Plaintiff contends that it is undisputed that Defendants violated Industrial Code §§ 23-1.21(b)(4)(i) and (iv) which require, respectively, that "[a]ny portable ladder used as a regular means of access between floors . . . shall be nailed or otherwise securely fastened in place" and that "[w]hen work is being performed from ladder rungs between six and ten feet above the ladder footing, a leaning ladder shall be held in place by a person stationed at the foot of such ladder."  Plaintiff further contends that Defendants violated § 23-1.7(b)(1), which provides that "[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place."

K.J. Mountain argues, on the other hand, that it is entitled to summary judgment on Plaintiff's claim because Plaintiff's own actions, rather than the alleged violations of the Industrial Code, were the proximate cause of his accident.  K.J. Mountain's Mem. L. Opp. at 17-18.  Specifically, K.J. Mountain contends that Plaintiff caused the accident by failing to use the other available extension ladder on site and by failing to use the available safety devices to prevent the accident.  *Id.*

16

For the reasons set forth above, the Court finds that issues of material fact exist as to Defendants' liability, including whether Plaintiff was negligent in failing to use the available safety devices—i.e., the brace and the covering for the opening in the floor—and whether another ladder was available for his use at the time of the accident. *See Mulcaire v. Buffalo Structural Steel Const. Corp.*, 45 A.D.3d 1426, 1427-28 (4th Dep't 2007) (where plaintiff slipped and fell through an uncovered opening approximately 18 feet to the floor while installing floor decking, holding that plaintiff was not entitled to summary judgment on § 241(6) claim where "defendants raised an issue of fact whether there were extra sheets of decking available to plaintiff for safety purposes and, if so, whether plaintiff, based on his training, prior practice, and common sense, knew or should have known to cover the opening"); *Lorefice v. Reckson Operating P'ship, L.P.*, 269 A.D.2d 572, 573 (2d Dep't 2000) (holding that triable issues of fact as to defendant's liability under §241(6) existed, including whether plaintiff was negligent in failing to use a safety device that was available on the premises); *Spence v. NYC Transit Auth.*, 801 N.Y.S.2d 781, 8 Misc.3d 1007(A), at *6 (Sup. Ct. Mar. 29, 2005) ("[T]here remains a triable issue—given plaintiff's alleged conduct in unreasonably failing to use insulated clothing, tools and equipment that were allegedly available to him . . . —as to whether plaintiff either shares liability for, or was the sole proximate cause of . . . his accident . . . ." ).  Accordingly, the existence of such triable issues of fact preclude summary judgment on Plaintiff's § 241(6) claim.

In support of Golden Oak's motion for summary judgment on Plaintiff's § 241(6) claim, it advances the same argument it made in support of dismissal of the § 240(1) claim; i.e., that it did not supervise or direct Plaintiff's work and therefore is not liable as K.J. Mountain's "agent" under the statute.  Like § 240(1), § 241(6) also applies to "[a]ll contractors and owners *and their agents*."  NYLL § 241 (emphasis added).  Accordingly, as the Court has already found

17

that Golden Oak was K.J. Mountain's statutory agent and that it cannot avoid liability by its having subcontracted out the framing work to Plaintiff's employer, Golden Oak's motion for summary judgment on that basis is denied.  *Britez v. Madison Park Owner, LLC*, 960 N.Y.S.2d 49, 36 Misc.32 1233(A) (Sup. Ct. 2012) (holding that prime contractor was liable under §§ 240(1) and 241(6) as statutory agent of general contractor notwithstanding that it subcontracted out the work), *aff'd*, 106 A.D.3d 531 (1st Dep't 2013).

### c.  NYLL § 200(1) and Common Law Negligence

Section 200(1) of the NYLL is a codification of the common-law duty imposed upon owners, general contractors or their agents to provide construction site workers with a safe place to work.  *Singh v. Black Diamonds LLC*, 24 A.D.3d 138, 139 (1st Dep't 2005).  K.J. Mountain and Golden Oak both move for summary judgment on Plaintiff's § 200(1) and common law negligence claims on the basis that they did not control the work site and were not on notice of the alleged dangerous condition.  K.J. Mountain's Mem. L. Opp. at 8-10; Golden Oak's Mem. L. at 1-5.

Unlike Labor Law §§ 240 and 241, where vicarious liability attaches to an owner or general contractor, a plaintiff seeking to recover under § 200(1) must satisfy the liability standards of common-law negligence.  *Lopez v. Dagan*, 98 A.D.3d 436, 441 (1st Dep't 2012).  In other words, where the plaintiff's injuries arise out of a dangerous premises condition, the plaintiff must show that the owner or general contractor "either created the condition, or had actual or constructive notice of it sufficient for corrective action to be taken."  *Id.*  Where the plaintiff's injuries were due to an alleged defect in the method or material of the work, the plaintiff cannot prevail against the owner or general contractor "unless it is shown that the party to be charged exercised some supervisory control over the methods of work or materials

18

supplied." *Id.* at 441-42 (internal quotation marks and citation omitted).  A defendant has the authority to supervise or control the work if that defendant "bears the responsibility for the manner in which the work is performed."  *Ortega v. Puccia*, 57 A.D.3d 54, 62 (2d Dep't 2008) (citations omitted).

Here, Plaintiff argues that its § 200(1) claim is based both on the dangerous condition of the premises (i.e., the uncovered opening in the floor) as well as the manner in which the work was done (i.e., the ladder was unsecured).  Pl.'s Mem. L. Opp. (Doc. 46) at 4-5.  In support of its motion for summary judgment, K.J. Mountain argues that the uncontested evidence demonstrates that it had no control over the framing work and that it did not supervise, manage, direct or control any aspect of the work.  K.J. Mountain's Mem. L. Opp. at 10.  Moreover, K.J. Mountain contends that Plaintiff has presented no evidence to suggest that it was on notice of any dangerous condition with respect to the accident at issue.  *Id.*  In its submissions to the Court, Plaintiff does not respond to K.J. Mountain's argument that it did not exercise control over Plaintiff's work and therefore cannot be held liable under § 200(1).

In light of the undisputed evidence that K.J. Mountain did not supervise or direct the work performed by Plaintiff and that it did not have notice of the purportedly unsafe condition, as well as Plaintiff's failure to specifically oppose K.J. Mountain's motion for summary judgment as to these claims, the Court finds that summary judgment in favor of K.J. Mountain on Plaintiff's § 200(1) and negligence claim is warranted.  Both Schwartz and Grass testified that K.J. Mountain did not control the framing work for this construction project.  *See* Swift Decl., Exs. A (June 13, 2012 Grass Dep. Tr.) at 19; B (Schwartz Dep. Tr.) at 22, 24.  Moreover, Plaintiff testified that while working on the house, he only took direction from Garcia.  Swift Decl., Ex. F (June 13, 2012 DeAndrade Depo. Tr.) at 27, 56.  Additionally, Plaintiff has offered

no evidence to suggest that K.J. Mountain was on actual or constructive notice of the allegedly

unsafe condition.  Indeed, Schwartz testified that he did not know whether he was present at the

construction site at the time of the incident and that he did not become aware of Plaintiff's

accident until years after it occurred.  Swift Decl., Ex. B (Schwartz Dep. Tr.) at 24-25, 27, 36-37.

Accordingly, K.J. Mountain's motion for summary judgment on Plaintiff's § 200(1) and

common law negligence claims is granted.

With respect to Golden Oak's liability under §200(1), the question the Court must

consider is not whether Golden Oak was delegated the *authority* to supervise and control the

work Plaintiff was performing at the time of the accident—as is the case under §§ 240(1) and

241(6)—but, rather, whether Golden Oak *actually* exercised supervisory control over the work

on the premises, or created or had notice of the dangerous condition which produced the injury.

*See Lu*, 800 N.Y.S.2d 871, 22 Misc.3d 1112(A), at *6 (holding that prime contractor could not

escape liability under § 240 by subcontracting the work to plaintiff's employer, but dismissing

plaintiff's § 200 and common law negligence claim against same prime contractor where there

was "no evidence that [the contractor] actually exercised supervisory control over the plaintiff, or

that it created or had notice of a dangerous condition").  The Court finds that questions of

material fact exist regarding the extent to which Golden Oak actually supervised Plaintiff and

whether it was on notice of the allegedly dangerous condition.  Whereas Schwartz testified that

Grass directed the framing work on the project and actually performed work himself while at the

construction site, Grass testified that he did not direct or supervise Plaintiff's work on the house.

Moreover, Grass admitted at his deposition that he was aware of the existence of the opening in

the floor prior to Plaintiff's fall and that he was in the general vicinity of the accident.  Swift

Decl., Ex. C (Feb. 13, 2013 Grass Dep. Tr.) at 18-19, 22-27.  Accordingly, as disputed issues of

fact exist regarding the extent of Golden Oak's supervision and control of Plaintiff's work, as well as its knowledge of the purportedly dangerous condition, Golden Oak is not entitled to summary judgment on Plaintiff's § 200(1) and common law negligence claims.

**IV.    Golden Oak's Motion for Summary Judgment on K.J. Mountain's Cross-Claims**

Golden Oak moves for summary judgment on K.J. Mountain's cross-claims for indemnification pursuant the Sub-Contractor Agreement.  In support of its motion, Golden Oak cites to case law holding that an indemnification agreement executed after an accident occurs will generally not be applied retroactively, and argues that "there has been *prima facie* evidence presented that K.J. Mountain generated the hold harmless agreement and requested that Golden Oaks [sic] sign it *after* the alleged occurrence."  Golden Oak's Mem. L. at 9 (emphasis in original).  Contrary to Golden Oak's assertion, however, the circumstances surrounding the execution of the Agreement are strongly disputed by the parties.  Specifically, whereas Grass testified that he signed the Agreement in early 2011 and that Schwartz backdated it to August 15, 2009, Schwartz testified that Grass signed the Agreement on August 15, 2009, prior to the commencement of his work on the construction project, and denied asking Grass to sign the Agreement in 2011.  Accordingly, the Court finds that triable issues of fact exist regarding the date and enforceability of the Agreement which preclude summary judgment on K.J. Mountain's cross-claims.

**V.    Conclusion**

For the reasons set forth above, Plaintiff's and Golden Oak's motions for summary judgment are DENIED.  K.J. Mountain's motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, with respect Plaintiff's NYLL § 200(1) and common law negligence claims, K.J. Mountain's motion is GRANTED, and with respect to Plaintiff's NYLL

§§ 240(1) and 241(6) claims, its motion is DENIED.  Accordingly, the following claims remain in this case:  (i) Plaintiff's NYLL § 240(1) claim against Golden Oak and K.J. Mountain; (ii) Plaintiff's NYLL § 241(6) claim against Golden Oak and K.J. Mountain; (iii) Plaintiff's NYLL § 200(1) and common law negligence claims against Golden Oak; and (iv) K.J. Mountain's cross-claims against Golden Oak.  The Clerk of the Court is respectfully directed to terminate the motions.  Docs. 32, 37.

The parties are instructed to file their joint pre-trial order no later than Wednesday, January 8, 2014 and to appear for a pre-trial conference on Friday, January 24, 2014 at 2:00 pm, at which a final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated:     December 11, 2013
           New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.